Case number 21-2887, Cavanta McLilly v. Noah Nagy Arguments not to exceed 15 minutes per side Ms. Mainprise Hajek, you may proceed for the appellant Thank you. May it please the court, Jessica Mainprise Hajek on behalf of Cavanta McLilly I'd like to save 5 minutes for my rebuttal if I may Sure Your honors, this case comes before you today as Cavanta McLilly was convicted after trial by jury in Genesee County of assault with intent to murder, armed robbery, felon in possession and felony firearm Now our two main arguments and issues with Mr. McLilly's, well, our main issue with Mr. McLilly's trial is that the trial came down to credibility Herein, we had no physical evidence, no DNA, and we had a defendant who took the stand on his behalf saying, this wasn't me, I went into a store, bought some items, left We have co-defendant, a co-defendant with substantial motive to lie, substantial bias saying, Mr. McLilly put me up to this, we have that identification We have two individuals who weren't charged but with also motive to lie saying, this is the guy that put me up to going into the store You're talking about the three young people? Absolutely, your honor, the juveniles, we have the one co-defendant that was actually charged, the other two that were not I think it's important to note that there's nothing in the record indicating that the two juveniles, Watkins and Reeder, not the co-defendant had previously even seen or identified Mr. McLilly at all, they never testified previously and that's on the record at trial We have surveillance video from the gas station where Mr. Singh, the victim in the case, was brutally shot and ultimately the store was robbed that had a purple hue to it, it was difficult to distinguish the different clothing colors or different colors in general and we had an expert that testified as to his enhancement that he made on this video We have Mr. Singh who testified that the assailant, the person that shot him, was masked but yet he was still 100% that he could ID the person that injured him, that assaulted him, that attempted to murder him Wasn't the individual in the video wearing the same clothing? It wasn't their testimony that it was the same clothing that your client was wearing earlier when he came to the store? That's absolutely correct, your honor, that is the testimony that it was the same clothing However, we would submit and argue that the record shows that the video We have these officers that were testifying as to surveillance video, didn't have any personal knowledge surveillance video that was ultimately entered into evidence saying that the clothing is a coat in December, a black coat, jeans and brown shoes So this identical clothing I think is... And wasn't he also wearing those shoes at the hearing also? That's what they contended, down at preliminary exam that he was wearing the same shoes But I would note, and it's in the record, that at district court at the preliminary exam they actually took those shoes and tried to test it for DNA to see if there was anything on it All to no avail, there was nothing So there was an allegation, or the government believed that it may be the same shoes But again, when you're dealing with a winter in Michigan, we have a black coat, jeans, brown shoes, very amorphous, individuals with masks It's like they were driving a blue Chevy, you know, oh okay, pretty common And that's the argument also when it comes to the surveillance, they're talking about a blue Chrysler 300 Whereas Mr. McLillig in his defense testified that it was in fact black So the entire issue when it comes to these two officers with the authority of the badge behind them Looking at the jury and invading their province and saying, that's your guy, that's the guy that did this, that's the guy that shot So your argument really comes down to, I mean, it looks to me in the cross-examination it was brought out that the officers only had, the only basis of their testimony was that the fact that they reviewed this video I think that's clear Correct So the jury knew that Correct But it seems like your argument is the fact that they were officers and gave the testimony, that's the critical point Because the jury had all the facts to know what the basis for the officer's testimony was Which was that they reviewed a video And the jury got to review the same video So I guess, it seems to me that's your argument, that because they're officers that that makes it special, therefore there's a taint I agree in part, I agree that it's, absolutely, these are officers, there's necessarily a taint, you have the government But what other taint would there be besides that? The invasion of the province of the jury, and yes But the jury has all the same facts True To make their own decisions True, but when you have a police officer, as the court stated, when you have a police officer that is saying, this is the guy, too, as a matter of fact And then, I believe the officer in charge, Petrick, testified, not quite the exact same, but similarly, that these minors were truthful when they came and spoke to me, etc, etc You have a witness with the badge behind them saying And regardless of the fact that the jury got to view the video, we know that the video had its difficulties We know that the video had its, I believe there was testimony by Detective Sergeant Tomasi, the expert, that he had to enhance it, he had to use filters, etc So, with that, I believe that the officers testifying and the government testifying that this is the guy necessarily taints and invades the province of the jury And so, your argument is that it is a constitutional violation for a police officer to testify as to what is on a video As to an identification I believe that there's clear case law that if you have an officer that observes a defendant for a substantial amount of time, that has some sort of knowledge, etc, to the basis of this identification It's not just that they watched the video, it's that they pointed to Mr. McLilley and said, this is the guy, this is the shooter, we're not making any mistakes here, etc I think that what Judge Bitlis, if you, is it always a constitutional violation for an officer to improperly testify in that manner? Or do you need more to say it's a due process violation? I think every case is obviously fact specific, I don't know if it would always be, but in this instance, with the fact that, I mean, is it a constitutional violation? Yes, I would argue, absolutely But then, you obviously have the analysis afterwards whether or not it had a substantial and injurious effect or influence And in this instance when we are dealing with the credibility, the lack of actual physical evidence, DNA, anything of that nature And a victim who identified based on a mask and the bias of the other identifications, that it absolutely rises to a level where I don't really know what bias there was, I mean, necessarily for the other three I mean, one of the young men goes, I mean, I'll be candid with you, the other three witnesses, the young men, I think are your biggest obstacle here In saying that the officer's testimony was harmful under Brecht I mean, you have three young men who say that McLilley came to them and asked them to do this scheme to drop a bottle And then one of them does it, and then McLilley supposedly goes in there But they identify him, he says that he talked to them, right? And so he's not wearing a mask when he talked to them And one of them, so far as bias goes, I mean, one of them went straight to the police, right? And was not charged, so is there a bias for that person? I believe that there's bias for all three, obviously the co-defendant who has charges But you do have the conflicting testimony wherein, and I believe it was cross-examined quite extensively by trial counsel That all of these individuals, all three juveniles came to the police and gave the same story to begin with And that was that Mr. McLilley walked by and they wanted to know, hey, do you want to buy some weed? So you have three juveniles who, one, charged with a very serious offense Two, there was information in the record that they were in school and they were playing basketball They had a coach, and I think the stigma when it comes to the reality of what Mr. McLilley testified to These kids were out there selling weed, and their parents know it, their teachers know it, etc. I mean, you drive down the Michigan highway these days, you know, and everybody's selling weed Agreed, I can't drive down in Genesee County without seeing four or five dispensaries Yeah, Genesee County in particular, everywhere, it's like every billboard I'm sorry, go ahead No, no, that's actually a very valid point, but back in 2012 that wasn't the case True I believe that that is my time Okay, you'll have your full rebuttal Thank you And we'll hear from Mr. Jenkins Thank you and good morning, Your Honors Good morning May it please the Court, Eric Jenkins on behalf of Respondent What petitioner is attempting to do is spin a clear-cut state law evidentiary issue into one of constitutional magnitude Well, it could be a constitutional issue if it rendered the trial fundamentally unfair, right? That's true, and that's why I'm going to jump straight to the facts that the Court has been asking about today I think the facts Let me just add, I mean, just up front, just housekeeping, narrow the range of dispute I mean, you agree, as I understand it, that the officer testimony was improper It should not have been permitted to opine based on the same video that the jury can look at You know, offer his whatever opinion that McLilley is the guy in the video Do you agree with that? Under the state rule of evidence, yes Okay At least as to one of the officers I believe the first officer to testify, there may be some debate about that officer, what they opined to I know a lot of the discussion, a lot of the testimony was about wearing the same clothes and things like that The second officer definitely gets into calling the person on the video the defendant many times But that's under state law that we agree it's an error Okay As a constitutional violation, we do not agree It's a different question It is a different question And I think, again, the facts are what matter here to demonstrate why it's not a constitutional violation And then if this Court were to find something along those lines, why any error here is harmless What could be a constitutional violation? Maybe that's a bad question, but, I mean, if you're saying this is not, then is there Can an officer testify against anything on a video in any instance and get away with it under the Constitution? No, I don't know if that's true, they can get away with anything under the Constitution I know the appellant has cited Cooper as some evidence to suggest there may be a situation where an officer has gone too far But I think that case, one, is distinguishable from this case in that that officer said, looking at all the evidence, everything pointed to the defendant as the guilty party Secondly, that case was pre-EDPA, and it flipped not only on that issue but also on cumulative error which the Supreme Court has not said is a basis for habeas relief But I think, going back to the facts of this case, I think some of the Court's questions highlight some issues with what appellant is arguing here First of all, the boots, I believe Judge Bush, you mentioned these boots, these brown boots What's important to remember about that evidence, though, is it was physical evidence The boots were seized at the preliminary examination So the petitioner wore those boots to the preliminary examination The investigating officer, Detective Petrick, I believe is how you pronounce his name, noticed it, had the boots seized And then those boots were submitted at trial as an exhibit And a picture from the robbery of the perpetrator wearing boots was submitted for the jury to look at So again, the jury has all the facts here They have the boots, they have the picture, and they can make that comparison Secondly, the Chevy was mentioned And I understand that there was, it's contended that the video's not that great and that there's blue versus black and Chevy in Michigan in winter A lot of people drive Chevys But the key about that, though, is that all three of the juveniles testified that they saw the defendant or, sorry, the appellant in a Chevy or in a car He was asking them questions about going inside, do you want to make some money? Could you go inside and drop a bottle? One of them testified that he told them to get the clerk from out behind the counter Then all three testified that the individuals they saw get out with guns got out of the same car as the one that the appellant was in asking those questions And so, video aside, you have three witnesses who are saying he was in that car, that's the car the assailants got out of So again, I think that's important evidence for identification for showing that this person was involved in this robbery and then leading to at least an inference that this person was the one who went into the store Again, I point back to the boots that were worn as another independent evidence of identification showing that this was the person, the appellant was the person committing the robbery in this case Also, the basis of the identification, even of the officers who did give this opinion specifically the first officer When he's testifying, he's not out of the blue saying that's the defendant on the video there He gives a basis for the identification The basis for the identification is he says we have this person who comes into the store initially which Mr. McLilley admits is him A photo of that person was put out on the news and an anonymous tipster came out of the woodwork and said that's Mr. McLilley That was compared to an SOS photo or a driver's license photo of Mr. McLilley Those were all submitted to the jury for their consideration There were two videos There was the video from the initial entrance and the video from the robbery? My understanding is that the entire video was shown At least still shots from each part of the transaction were shown to the jury There's photos of Mr. McLilley coming into the gas station initially without a mask on Mr. McLilley is confronted with that, I believe by his own counsel during trial and admits, yeah, that's me He disputes whether or not he's the person with the mask on later But then the jury is given still shot photographs of the person coming in with the mask  He testified that he believed it was Mr. McLilley the second time because they were wearing the same clothing And again, later on The second time being exactly when? Sorry, I apologize The second time would be when he comes in with a mask on with a gun in his hand and robs Remind me, where are the three young men situated at the time that the masked gunman goes back in? They're outside the gas station So they're kind of still just hanging around? Hanging around I believe the testimony is pretty consistent across the board with all three of them Once they see individuals jump out of the car, one of which they saw was armed they took off running So they're not in the actual gas station when the robbery occurs There is another witness who's in the gas station who does see the two masked men but he's not able to identify Sorry, I apologize, he's outside the gas station sees the same thing out of the same car So, I mean, the evidence relating to the event itself as you would describe it then Let me just see if I can summarize it So, McLilley undisputedly goes into the convenience store unmasked Yes He's on the video He admits that in his own testimony, right? Yes Sorry, I don't want to interrupt, Your Honor Yeah, that's all right He calls the investigating officer when his picture is put out on the news He calls the investigating officer and says, Why is my picture out on the news? And that's the picture of him going unmasked into the convenience store before the robbery Okay, all right So he goes into the convenience store unmasked The three young men say So he comes out and then the three young men say After he comes out, he asks them Same guy, McLilley, to go in and drop a bottle, right? Yes And McLilley in that conversation is sitting inside something like a blue Chevy or 300 And then the young men say that McLilley That three guys get out of that same vehicle One of them with a weapon Now they're masked And they go in And the young men run away I believe they say one or two I think one witness says one The other one Okay All right And then you have Singh who Admittedly under extremely difficult circumstances Thinks he can make this identification That's pretty much the body of your evidence To the effect that this error was not prejudicial Is that fair? I'd also add in the boots that were seized at the preliminary examination So McLilley wears these boots to the prelim The officer says those look like the boots on the video of the assailant He seizes those And then those boots And then a picture of the assailant wearing boots Are submitted to the jury for their analysis and comparison I mean that's, you know I mean boots in Michigan in December or whatever There was testimony by the officer That the reason he thought those boots were the same boots from that video Was there was a distinctive strap on the top of the boots A brown strap that he noticed Okay And so that was pointed out to the jury as well And then again there was a photograph of the boots And then the boots themselves submitted as evidence I do think Singh's testimony is very compelling He obviously is the one who was shot He's pleading for his life He's shot by somebody He identifies that person as McLilley And then he's cross-examined by defense counsel Quite extensively about this mask issue And how could you remember this? It was in the heat of the moment And he stands up to the cross-examination He adamantly maintains that this is the person that shot me It's McLilley He says it's the eyes and the forehead that he remembers But he says this is the person that shot him I'm sure that was pretty gripping in the courtroom Yeah And I know he was in quite a lot of pain when he was testifying as well And even at sentencing he was still in pain from the issue But I think all of that is what we maintain is where the So that's the evidence that sort of renders harmless You can certainly see how a jury deliberating Listening to the defendant's argument as to why Taking apart the pieces of evidence They really can't rely on it And how eyewitness testimony can often be problematic The fact that you could see somebody one time And then get confused about that identification And the identification of the actual shooter And all of that And then be deliberating and sort of say Yeah, but the police officer, they're professionals He said it's the same guy I have two points in response to that First of all, the jury was instructed that the police officer testimony Must be given the same weight as any other witness And jurors are presumed to follow their instructions Secondly, and probably more importantly in this case The jury got to be their own eyewitness The jury was given the surveillance video to look at Was given these still framed photographs of Mr. McWillie coming in beforehand And then the assailant afterwards coming in with a gun With a mask on And the photo of, and I believe this was submitted to the court Upon the court's request The photo of the assailant The mask is like a surgical mask It's not a full mask It's not covering the entire face It's basically just across the mouth So the jury got to look at that And make this determination on their own I think that's the most compelling evidence for the jury So we inquired about the video No one can find it, is that? That's my understanding, your honor, yeah Okay, and then on the pictures I believe that we got Only the picture with the mask Are you saying that we also got a picture of him coming in without a mask? No, I believe there were two pictures requested by the court These exhibits 167 and 181 And they were both of people masked So those are the two the court has Are there exhibits of him without a mask? I believe there are I didn't reach out to figure out if they had all of those exhibits But I do believe there are I believe it's exhibits 167 through 180 Or maybe 167 through 182 Are all pictures, still frame photographs From the robbery itself And I believe in there, there are masked and unmasked Yes, but this would be only up to Can we get all these photographs you're talking about? I can actually reach out to the county and see if we can Is that okay? Why don't you all work together I mean, Helene, do you want to specify what No, because we just asked the clerk's office for the video And we got these two photos I don't know exactly what they asked for But I think it would be helpful if we saw what there was Okay It's my recollection from the transcript That 167 through, I believe, 182 Were all admitted at the same time And they were these photographs of the I believe petitioner coming in initially Unmasked And then also the assailants coming in with masks on So I could reach out and try to get all that group of photographs If you jointly can provide us with what You think is responsive to Judge White Obviously only what was introduced to him Yeah, obviously And I apologize if there was misunderstanding on my part About what photographs were requested I apologize for that I just thought it was the two You know, on one legal question As I understand it, you're saying that under Davenport We must do, for harmlessness, both a Brecht And a deferential Chapman review? That's correct But the state court itself didn't do a Chapman review There's nothing like a Chapman review there In terms of harmlessness? Correct As to the constitutional issue Yeah, it didn't do a Chapman qua Chapman review It never ostensibly reached the federal constitutional issue It's one of these odd cases where they just sort of Don't even say anything about it I believe, actually, looking back at the Appellate filings in state court I don't believe the petitioner ever raised I know, but you didn't argue that in your brief I understand They can waive that I'm assuming that's waived for purposes of my question We did not raise that I understand what Davenport says But we have nothing by way of a Chapman determination To defer to here Unless I'm missing something I'm not trying to raise the procedural default this 11th hour I'm just explaining why the state appellate court didn't do it It was never asked to approach the constitutional issue It was always under state law I see, and that's fine Then we're left with Brecht But can we agree then Just again for purposes of sort of narrowing disagreement That our review would just be under Brecht Because there just isn't a Chapman determination for us To be deferential toward I don't know if I would agree with that I think that the harmlessness analysis done by the trial court Pretty much subsumes the constitutional issue Not really Isn't the state court determination In a sense as Justice Alito put it Less protective than the federal I mean the state standard is But for this the guy's acquitted And then the Chapman standard Is much more protective of a criminal defendant Beyond a reasonable doubt We're confident that this did not affect it So Chapman's better for Mr. McLilley And so they're applying a standard That's more favorable to the prosecution It's just a different It's not a Chapman determination And I'd agree with that They're different Obviously one is more protective than the other I think under either standard he loses I understand that I'm just trying to figure out what we need to address And what we don't I appreciate that your honor I see my time is out One other question on the sentencing issue Yes What's your quick response to the fact That the judge made this finding a fact That substantially increased the sentence Yeah I think And I don't want to pair it too much with the brief I think it's harmless for two reasons One it's harmless because the trial court In the motion for relief from judgment Indicated that the sentence would not be changed I know there's some quibbling about this Armed robbery issue But if you look at the motion for relief from judgment And you look at the opinion The court clearly is addressing Offense variable six As it applies to assault with intent to commit murder And in fact Under the Michigan sentencing guidelines Offense variable six Cannot be even scored for an armed robbery The statute is clear It can only be scored for a homicide Attempted homicide Solicitation or conspiracy to commit homicide offense So we still maintain that That armed robbery notation At the end of the motion for relief from judgment Where the court says In any event We wouldn't have changed our sentence On the armed robbery They meant the assault with intent to murder I think they had to have meant The assault with intent to murder The court doesn't say wouldn't have changed Wouldn't have been What did the court say? Substantially different? Substantially affected or substantially different Which I take to mean They wouldn't have changed it I mean also considering That on the armed robbery They went above guidelines And sentenced to 40 to 60 years So I think it's fair to reason They're not going to change The sentencing in this case Even with the guidelines being advisory And the second point I made And it's also made in the brief Is that it's still harmless Because even using the jury found facts The jury would have had to have found To convict of assault with intent to murder That there was an intent to kill Commit great bodily harm Or callous disregard for harm or death That would still That would put the OV6 scoring At 25 points instead of 50 And when those guidelines are put in place Under that formulation The sentence still falls within the guidelines range So advisory, mandatory, whichever Even using only facts That would have been found by the jury This sentence is still within the guideline range So I think it's harmless Either way you strike I do note that this court The second point The second reason it's harmless Is this court recently just remanded a case Evans v. Rewerts For the same issue It was in the lien scoring But if you took away the judge found fact And looked only at the jury found facts The sentence was still within the guideline range This court remanded back to the district court To determine if that was harmless error And I have the site if the court wishes So on the sentencing issue as well We're doing a Brecht analysis I'm not trying to repeat that I'm just saying that's the nature of what we're doing Yes Okay Alright Mr. Jenkins Thank you very much for the time Thank you Appreciate it We'll hear a rebuttal If I can just briefly Regarding the first issue When it comes to the constitutional error And identification I think Judge White hit the nail on the head One thing that should be pointed out About those three juveniles Is that the amount of time That's alleged that they saw Mr. McLilley He obviously admits that he went to the store to buy items He says he came out and left These juveniles contend that he walked by them Got into a vehicle and drove up And made a couple of statements to them With a window partially down Only partially down Per the testimony of Robinson And I think it's important to note the facts Additionally that Mr. McLilley testified When he saw a photograph on the news He also had officers that had come to his home And he's the one that reached out to the police Saying hey what is going on here Why are you looking at me How about the testimony from some of these young people That the assailants come out of that same vehicle I mean that would be especially damaging I can understand that The testimony is that the juveniles are standing At the gas station outside They see a vehicle that's in a completely different position Parked at a pump And the person that's purportedly the driver People get out and then they take off So we're dealing with a matter of moments here That these people are saying the same car A Chevy Whether it's blue The testimony from our client is that it was black So I understand the court's point When it comes to the damning evidence But we have to look at the time period as well That goes into the issues with eyewitness identification And I apologize I did not greatly discuss the Aline issue And I think necessarily in this instance I know the government is arguing that the In the motion for relief from judgment Judge Fullerton indicated that She would not have changed her sentence When it comes to the armed robbery And this was after an analysis previously As to the fact that she exceeded the guidelines Without giving substantial and compelling reasons to As she needed to under state law at the time I don't think we can say In a constitutional violation When you necessarily have judicially found facts And mandatory guidelines at the time That it's a typo And as such is harmless Obviously courts speak through their orders And as I indicated The judge was previously addressing The armed robbery conviction at length And we're dealing with one sentence I would have sentenced the same on the armed robbery And we're dealing with the assault What was the mandatory floor at the time of sentencing? I mean the Michigan guidelines were mandatory at that time Correct And so what was the floor that the district court had For a sentence? He got 40 years He got 40 years And with the guidelines being mandatory if I can I believe the guidelines as scored at the trial court On the assault with intent to murder With that additional scoring of the points Were 225 to 750 Months? Months on the minimum Obviously we're not dealing with a two years flat There's a felony firearm that's consecutive in proceeding So in addition to that And especially when we're dealing with A sentence of 45 years Where Mr. McLilley is 38 years old at the time of the sentence And his earliest release date will be when he's 86 years old The 50 points But the judge goes way above the floor She does, absolutely So the floor of the 225 The guidelines range the bottom to the minimum So this is like a federal case where Say before a lien The district court makes a finding that Triggers say a 10 year mandatory minimum And the judge ends up giving him Say 22 years and says I would do that It briefly says I would do that Even without the mandatory minimum I agree, yes, that's our argument I would note that To go above or below There has to be substantial and compelling reasons For the Michigan Right But I'd query whether that hurts you I mean the question here is whether we have grave doubt Correct About We have grave doubt as to whether The trial judge would have sentenced him below Had that floor not been where it is And sometimes, you know They might be sentencing in relation to the floor To some extent Like a higher floor encourages them to go higher But I mean why do you think we Given that the judge seemed to You know, kind of dust I mean just not Not be restrained or not feel compelled at all By that floor Why do you think we ought to have grave doubt About the sentence Well to begin with because of the language In the order that's specifically written That says it's the armed robbery And not the assault with intent to murder And if you take those guidelines Take that guideline range And even conceding the government's point That under the assault with intent to murder The judge found facts Instead of 50 points for the scoring of OB-6 It may be more like 25 You're still dealing with a sentence of Sentencing guidelines of around 171 to 570 So I think the grave doubt Comes into play when you have The mandatory nature of the guidelines There's no consideration When it comes to the relation of the floor Etc. as to how Judge Fullerton Actually decided to sentence Mr. McWillie To that 45 years And just a simple dismissive line That I wouldn't change it for armed robbery All right Any further questions All right Thank you both for your arguments Thank you Case to be submitted